# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 02 C 1582 |
| TIP TOP BUILDERS, INC.; DENNIS MARKOS; CAROL MARKOS; 1418 NORTH LAKE SHORE DRIVE CONDO-MINIUM ASSOCIATION; and LaTHOMUS PROPERTY SERVICES, LLC, | ) ) ) ) ) ) ) | Judge Manning |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff St. Paul Insurance issued a commercial general liability policy to E. Shavitz & Sons, Inc., a subcontractor on a construction project where defendant Tip Top was the general contractor. A pipe burst on the project, causing significant damage to various condominium units. As a result, eight separate lawsuits were filed against Tip Top and Shavitz (as well as others). Claiming it was an additional insured on the St. Paul-Shavitz policy, Tip Top sought coverage from St. Paul. In response, St. Paul filed the instant declaratory judgment action seeking an order finding that it is not obligated to defend or indemnify Tip Top.[1]

Tip Top's first motion in limine is before the court. In this motion, Tip Top seeks to bar St. Paul from introducing evidence or advancing arguments disputing that Tip Top is an

---

[1] St. Paul's position that it has no duty to defend or indemnify is based on its claim that Tip Top does not qualify for additional insured status. Alternatively, St. Paul contends that even if Tip Top was an additional insured, Tip Top's claim is barred by the policy's completed operations exclusion. Because the scope of the latter exclusion is irrelevant for the purposes of the additional insured issue presently before the court, the court will not discuss it.

additional insured on the St. Paul-Shavitz policy. For the following reasons, Tip Top's motion is denied.

I. **Background**

Tip Top contends that St. Paul's lawyers in the underlying state court actions ("Underlying Actions") told the trial court that Tip Top was an additional insured on the St. Paul policy. Tip Top thus argues that St. Paul is collaterally estopped from contesting Tip Top's status as an additional insured in the instant action.

A. **Explanation of the Issue**

At the outset, the court notes the parties' positions require the reader to focus on the difference between the ministerial task of *naming* a person or entity as an additional insured on a certificate of insurance and that person or entity actually *qualifying* for coverage as an additional insured under the terms of the policy. For this purpose, it is important to keep two things in mind: (1) both parties agree that Shavitz gave Tip Top with a certificate of insurance naming Tip Top as an additional insured, and (2) the policy issued by St. Paul to Shavitz states that additional insured status is only provided to "any person or organization you [Shavitz] *are required in a written contract* to show as an additional protected person." (emphasis added).

Thus, when the parties filed cross-motions for summary judgment before this court, they focused on whether a written contract required Shavitz to name Tip Top as an additional insured. St. Paul argued that no such written contract existed. In contrast, Tip Top argued that various written communications between the parties constituted a contract. The court found that genuine issues of material fact existed with respect to the existence of a written contract and thus denied the motion for summary judgment.

In Tip Top's present motion in limine, it asserts that it does not need to prove at trial that a written contract required Shavitz to name Tip Top as an additional insured. In support, Tip Top invokes collateral estoppel, contending that the trial court in the Underlying Actions previously ruled that it was an additional insured.

**B.     The Parties' Positions**

In support of its claim that it is an additional insured, Tip Top directs the court's attention to Counts II and III of its second amended cross-claim filed in the Underlying Actions. In those counts, Tip Top alleged that Shavitz breached written and oral contracts by failing to designate Tip Top as an additional insured on the Shavitz-St. Paul policy. Shavitz ultimately filed a motion for summary judgment as to these claims. As Tip Top acknowledges, Shavitz's motion did not concede that any sort of contract existed between Tip Top and Shavitz. Instead, Shavitz's motion stressed that Shavitz had provided a certificate of insurance to Tip Top *naming* it as an additional insured under its policy with St. Paul. The state court found that this satisfied any obligation that Shavitz may have had to name Tip Top as an additional insured and rejected Tip Top's breach of contract claims against Shavitz.

St. Paul does not dispute that Shavitz issued a certificate of insurance to Tip Top naming it as an additional insured. However – and this is where it gets a little tricky – St. Paul contends that the issuance of a certificate of insurance does not necessarily mean that Tip Top actually qualified as an additional insured under the Shavitz-St. Paul policy. Specifically, St. Paul contends that Tip Top was only eligible to be an additional insured under the Additional Insured Endorsement if a written contract required Shavitz to include it as an additional insured. According to St. Paul, the state court did not litigate or decide this issue. Or, to put it in St.

Pauls' own words:

> As the trial court in the Underlying Lawsuit recognized, whether Tip Top is an insured under the terms, conditions and exclusions of the St. Paul Policy's Additional Insured Endorsement is purely a question of coverage distinct from whether Shavitz fulfilled a purported obligation to procure a certificate of insurance for Tip Top.

Resp. at 7.

Ultimately, then, as the court understands it, Tip Top's collateral estoppel argument can succeed only if the existence of a certificate of insurance naming it as an additional insured definitively requires St. Paul to extend coverage to Tip Top as an additional insured.

## II. Discussion

As stated recently by the Illinois Appellate Court:

> Collateral estoppel, a branch of res judicata, prohibits the relitigation of an issue actually decided in an earlier proceeding between the same parties. *McCulla v. Industrial Commission*, 232 Ill.App.3d 517, 520, 173 Ill.Dec. 901, 597 N.E.2d 875 (1992). In order to apply collateral estoppel, (1) the issue decided in the prior adjudication must be identical to the issue in the current action; (2) the party against whom estoppel is asserted must have been a party or in privity with a party in the prior action; and (3) the prior adjudication must have resulted in a final judgment on the merits. *Dowrick v. Village of Downers Grove*, 362 Ill.App.3d 512, 516, 298 Ill.Dec. 672, 840 N.E.2d 785 (2005).

*Mabie v. Village of Schaumburg*, — N.E.2d —, 2006 WL 845407, at *2 (Ill. App. Ct. Mar. 31, 2006). Having identified the parties's positions, the court will now attempt to discern what issue was actually litigated by the parties and ultimately decided by the trial court in the Underlying Actions so it can determine if St. Paul is collaterally estopped from contesting coverage as to Tip Top.

The court begins with Tip Top's cross-claim for breach of written contract against Shavitz. In this count, Tip Top alleged that "[a]s part of the Insurance Specifications referenced

in the 'invitation to bid' letter [sent out by Tip Top to various subcontractors], Tip Top required that subcontractors, including Shavitz, *name Tip Top Builders, Inc., as an additional insured* on the Subcontractor's policy of liability insurance. . . ." Tip Top's Second Amended Cross- Claim, Count II at ¶21 (emphasis added). This count goes on to state that "Tip Top required that each and every Subcontractor on the Markos Renovation Project submit a Certificate of Insurance to Tip Top as evidence of the minimum insurance requirements *and the naming of Tip Top Builders, Inc. as an Additional Insured*." Id. at ¶22 (emphasis added). Finally, the same count alleges that "Tip Top, however, refused to make a single payment to Shavitz for work on the Markos Renovation Project, until [the issuance of] a Certificate of Insurance evidencing the minimum insurance specifications *and the additional insured status* of Tip Top was filed with Tip Top . . . ." Id. at ¶29 (emphasis added).

In their briefs on the motion for summary judgment as to the breach of contract claim raised in the Underlying Actions, both parties focused on *Tanns v. Ben A. Borenstein and Co.* [BABCO], 688 N.E.2d 667 (1st Dist. 1997). In *Tanns*, the defendant, BABCO, filed suit against Arcadia, a subcontractor, for breach of contract based on Arcadia's insurance carrier's refusal to defend BABCO in an underlying negligence action. *Id*. at 668. The agreement between Arcadia and BABCO required Arcadia "to procure and maintain insurance at its own expense and to name BABCO as an additional insured." *Id.* Arcadia procured the insurance, which named BABCO as an additional insured. When the underlying negligence action was filed against BABCO by a pedestrian walking by the construction site, BABCO tendered its defense to Arcadia's carrier, which denied coverage on the ground that the policy excluded coverage for occurrences arising from BABCO's negligence.

The *Tanns* court denied BABCO's breach of contact claim against Arcadia because the "record establishe[d] that BABCO was named as an additional insured on the comprehensive insurance coverage obtained by Arcadia." *Id.* at 672. The terms of the policy, however, excluded coverage for occurrences based on BABCO's negligence. The court concluded that "[i]n our view, the record establishes that the parties never agreed that Arcadia would have a duty to have BABCO insured for injuries caused solely by BABCO's negligence." *Id*. Ultimately, then, the court found that by simply naming BABCO as an additional insured, Arcadia had complied with its contractual obligation, and that it did not breach its duties under the contract simply because the insurer would not defend based on an exclusion in the policy.

In the Underlying Actions, Shavitz argued that *Tanns* was directly on point and entitled it to summary judgment on Tip Top's breach of contract claims.[2] Specifically, Shavitz asserted that, like the subcontractor in *Tanns*, it complied with its contractual obligations when it provided Tip Top with a certificate of insurance naming Tip Top as an additional insured. At the hearing on the motion for summary judgment, the trial court found *Tanns* instructive. Importantly, it also acknowledged the difference between the contractual obligation to *name* a party as an additional insured versus essentially guaranteeing coverage to that named party:

> Ms. Graziani [counsel for Tip Top]: They [Gutman and Shavitz] provided certificates of insurance, but they didn't have insurance – weren't certifying the insurance that was proper to take up.

---

[2] It is unfortunate that in its motion for summary judgment on the breach of contract count, at one point, rather than referring to its obligation to *name* Tip Top as an additional insured, Shavitz referred to its alleged obligation to "secure an additional insured endorsement on [Shavitz's] policy." However, as discussed more fully below, the court agrees with St. Paul that the issue of whether Tip Top qualified for additional insured status (i.e., that there was a written contract for insurance) is not the same as whether Shavitz named Tip Top as an additional insured.

> The court: Again we get into how can they do that. How can [Gutman and Shavitz] bind a third party [i.e., St. Paul]?
>
> Ms. Graziani: Tip Top relied upon the certificates [of insurance] [Gutman and Shavitz] provided.
>
> The court: I question that . . . What [Tip Top] relied on was the fact that [Gutman and Shavitz] have provided insurance, and apparently absent a declaratory judgment decision where you knew that the insurer was going to come in and defend, I think you are taking a chance. I mean, if I were an insurer, I would take every opportunity to see that I will only defend if in fact I have to. It happens all the time.
>
> . . .
>
> So that's a chance that somebody takes when they get insurance, that here is something in that policy that doesn't require the insurance to defend, there is no duty to defend.

Report of Proceedings, August 22, 2003, at pp. 96-97.

Shavitz's attorney also argued, "You're not certifying coverage. You're certifying that they're named. That's the difference." *Id*. at 98. The trial court agreed with Shavitz that naming a party as an additional insured did not necessarily bind the insurer, stating, "Well, like I say, I'd be interested in finding out how you can bind a third party [i.e., the insurance company] to do something that you have no control over [i.e., guarantee coverage]." *Id*.

The judge then found Shavitz had fulfilled its obligation to *name* Tip Top as an additional insured and granted summary judgment to Shavitz on Counts II (breach of a written contract) and III (breach of an oral contract). Tip Top now asks this court to find that the state court ruled that Shavitz's naming of Tip Top as an additional insured means that it is entitled to coverage as an additional insured.

Unfortunately for Tip Top, its position ignores the distinction noted by the *Tanns* court

and the trial court in the Underlying Actions between procuring insurance (*i.e.*, Shavitz's naming of Tip Top as an additional insured) and ascertaining whether Tip Top in fact qualifies as an additional insured under the terms of the policy (*i.e.*, the determination as to whether Tip Top was actually covered under the policy). The court agrees with St. Paul that this distinction is critical. And because there is a difference, the issue litigated in the Underlying Action relating to Tip Top's breach of contract claim against Shavitz is not the same as the one presently before the court. Accordingly, the first element of collateral estoppel is not satisfied, so Tip Top's first motion in limine is denied.

**III. Conclusion**

As Charles Dickens famously said, "Take nothing on its looks; take everything on evidence. There's no better rule." Great Expectations, Ch. 40 (1861). For the above reasons, the court finds that coverage under the St. Paul-Shavitz policy turns on evidence that must be adduced at trial, as opposed to the mere existence of a document issued by Shavitz naming Tip Top as an additional insured under that policy. Thus, Tip Top's first motion in limine [103-1] is DENIED.

**ENTER:**

**DATE:** May 5, 2006

_____
**Blanche M. Manning**
**United States District Judge**